UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Fynale Barnwell and Shavell Barnwell, Individually, and as natural parents and Guardians of, M.B., a Minor Child, | ) ) ) ) | C/A No.: 3:23-cv-583-SAL |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE |
| Lexington School District One, GERRITA POSTLEWAIT, in her individually capacity, NICOLE LIVINGSTON, in her individual Capacity, JACOB SMITH, in his individual Capacity, and South Carolina Department of Education, | ) ) ) ) ) ) ) | 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS |
| Defendants. | ) ) ) | |

Defendants Lexington School District One, Nicole Livingston, and Jacob Smith filed a Rule 12(b)(6) Motion to Dismiss on April 5, 2023, Docket No. 18, which was granted in part and denied in part. Per the Court's Order of February 20, 2024, the following claims from Plaintiff's Amended Complaint survived and were to proceed to discovery:

- A. Plaintiff's Fourth Amendment claim against Defendant Livingston;
- B. Plaintiff's Fourteenth Amendment claim against Defendant Livingston;
- C. Plaintiff's First Amendment claim against Defendant Livingston;
- D. Plaintiff's First Amendment retaliation claim against Defendants Livingston and Smith; and
- E. Plaintiff's Loss of Services claim against Defendant Lexington School District One.

On July 29, 2024, Defendants filed the present Rule 12(c) Motion for Judgment on the Pleadings, seeking dismissal of all the remaining causes of action. Defendants assert that both Livingston and Smith are entitled to qualified immunity and that the loss of services claim against the District is barred by the Court's prior Order. For the reasons set forth below, Defendants' motion must be denied.

1

# FACUTAL ALLEGATIONS

Plaintiff M.B. is an African American student at River Bluff High School, a school within Defendant Lexington School District One. Defendants Livingston and Smith are state actors as employees/agents of Lexington School District One and acted under color of state law. On November 29, 2022, M.B. was walking in a hallway of River Bluff High when the pledge of allegiance played over the school intercom system. Other students were also present and walking in the hallway. M.B. continued to walk silently while the pledge played. She did not disrupt or come into contact with any other student.

As M.B. was silently walking, Defendant Livingston yelled and physically assaulted M.B., demanding that M.B. stop and physically stopping her movement. Defendant Livingston actively punished M.B. for refraining from saying the pledge in an attempt to force her to comply or otherwise chill M.B.'s silent act of lawful protest. M.B. was the only African American student in the immediate vicinity. Students of other races were present in the hallway and also not participating in reciting the pledge, but M.B. was the only student assaulted by Defendant Livingston. Defendant Livingston then escorted M.B. to the office of Defendant Smith, the principal of River Bluff High School. Defendant Smith questioned M.B. about her patriotism, asking her if she loved her country. Defendant Smith effectively held M.B. in his office, pressuring her to abandon her silent objection to the pledge, efforts that both punished M.B.'s lawful exercise of her constitutional rights and served to chill her future actions. After M.B. and her parents spoke out against the violation of her rights, including bringing this issue to the Board of Education, Defendant Smith acknowledged and approved Defendant Livingston's actions in an effort to chill M.B.'s exercise of her right to protest compulsory recitation of the pledge of allegiance.

As a result of Defendant Livingston's actions, M.B. was prevented from conducting her act of silent protest by way of actual physical interference and the chilling effect of being physically stopped, grabbed, and escorted to the school principal as a threat of disciplinary action. Defendant Smith held M.B. in the school office, continuing the interruption of her protected speech of silent protest and preventing M.B. from continuing with her school day, interfering with her educational opportunity. Defendant Smith further dissuaded M.B.'s act of lawful protest by questioning her patriotism and implying that Defendant Livingston acted appropriately in bringing her to the office. Defendant Livingston physically assaulted and restrained M.B. in violation of her Fourth Amendment rights. In choosing to only punish M.B. for protesting the pledge and allow white students to do so without interference, Livingston violated M.B.'s Fourteenth Amendment rights. Defendant Livingston interfered with M.B.'s First Amendment right to silently protest the pledge, and both Defendants Livingston and Smith retaliated against M.B. for her attempted lawful protest by keeping M.B. in Smith's office, subjecting her to questioning, and keeping her from returning to class in a timely manner. Further, Plaintiffs Fynale and Shavell Barnwell have incurred actual and consequential damages due to the medical expenses, loss of services, and increased risk of future harm to their minor child.

**STANDARD OF REVIEW**

A Rule 12(c) Motion "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc*., 741 F.3d 470, 474 (4th Cir. 2014). In assessing a motion under Rule 12(c), the Court applies the same standards as motions under Rule 12(b)(6) and is required to accept all well-pleaded allegations as true and draw all reasonable factual inferences in the plaintiff's favor. *Id*.; *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Where a defendant asserts qualified immunity as a basis for a 12(c)

motion, the proper inquiry is whether the plaintiff has pled facts that, if taken as true, state a claim that the defendant deprived the plaintiff of clearly established constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 666, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009). This process involves a two-step analysis assessing (1) whether the facts alleged make out a violation of a constitutional right and (2) whether the right was clearly established at the time of the misconduct. *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014).

In its Order of February 20, 2024, this Court determined that Plaintiff has sufficiently alleged violations of M.B.'s constitutional rights under the First, Fourth, and Fourteenth Amendments. To the extent that Defendants now seek to challenge this finding, Plaintiff would reiterate the Court's prior analysis. Plaintiffs set forth cognizable claims and allege sufficient injury for each of these claims to survive Defendants' prior motion to dismiss. There is no new evidence to consider, and the Court's prior findings must hold. Defendants now seek judgment on the pleadings based on arguments of qualified immunity and the position that a ruling on M.B.'s negligence claims should also bar the loss of services claim of her parents. Plaintiff addresses each of Defendants' arguments in turn.

## LAW AND ARGUMENT

**I.    Standard for Determining Clearly-Established Law**

Defendants Livingston and Smith contend that they are entitled to qualified immunity for their actions in this matter because their conduct did not violate any clearly established rights of M.B. As a general principle, "qualified immunity provides government officials who are performing discretionary functions a defense from liability for § 1983 civil damages unless: (1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable

4

person would have known." *Occupy Columbia* at 121 (internal citation omitted). Because this Court has already determined that the Plaintiff has stated viable claims of First, Fourth, and Fourteenth Amendment violations, the first prong of the qualified immunity analysis has been satisfied.

As to the second, Defendants correctly note that to show a violation of clearly established law, a plaintiff must identify some authority that would put the defendant on notice that their conduct was unlawful and that such authority may stem from the United States Supreme Court, the applicable United States Court of Appeals, or the highest court of the state in which the action arose. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). Defendants fail to note that when assessing whether a right was clearly established, "it is not required that the exact conduct has been found unconstitutional in a previous case." *Brockington v. Boykins*, 637 F.3d 503, 508 (4th Cir. 2011). "[O]fficials can still be on notice that their conduct violates clearly established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The applicable test "focuses on the objective legal reasonableness of an official's acts." *Occupy Columbia*, 124. Courts ask, "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted… 'it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Id.*; quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Still, even without directly on-point, binding authority, qualified immunity is inappropriate if the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Ray v. Roane*, 948 F.3d 222, 229-230 (4th Cir. 2020)(internal citations omitted).

**II. Defendant Livingston is not protected by qualified immunity in respect to Plaintiff's Fourth Amendment Claim.**

Defendant Livingston contends that Plaintiffs' factual allegations do not support a finding of more than a de minimis injury to M.B. and seeks to repeat the prior argument from the 12(b)(6) Motion to Dismiss that the conduct allege does not state a Fourth Amendment violation. The Court ruled that a conclusion as to whether the injury to M.B. was de minimis was premature, and there are no additional facts in the record at this time. To the extent Defendant Livingston seeks a qualified immunity ruling based on the sufficiency of the facts alleged, this matter has already been determined in Plaintiffs' favor.

Defendant Livingston also argues that "Plaintiffs have not put forward any case law holding that a school employee who stops a student in the hall and 'escorts' that student to the principal's office violated a student's Fourth Amendment rights." Docket No. 36-1, p. 7-8. Defendant cites *Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075 (5th Cir. 1995) and *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.,* 535 F.3d 1243 (10th Cir. 2008) in support of its argument that the Plaintiffs' allegation are de minimis and not actionable under the Fourth Amendment. Neither of these cases are applicable as binding authority in the Fourth Circuit. Further, these cases address the specific factual allegations concerning the degree of injury alleged. This Court has already ruled that Plaintiffs have stated an actionable injury at this stage.

Defendant Livingston cites a case from the District Court of Maryland, *Grant-Walton v. Montgomery Cnty. Bd. of Educ.*, No. CV-TDC-17-2339 (2018), for her position that the injury claimed by M.B. cannot substantiate a Fourth Amendment claim. Even if the Court is inclined to grant Defendant a second-bite at the apple with this argument, *Grant-Walton* is not a proper authority either. As a District Court decision, this is not binding authority. Moreover, the plaintiff in Grant-Walton claimed an unlawful seizure in being denied permission to leave the school

gymnasium during class.  The Court noted the proper standard in a Fourth Amendment seizure claim is whether under the totality of the circumstances "a reasonable person would have believed that he was not free to leave." *Id.,* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed. 2d 497 (1980)).  A Fourth Amendment claim concerning denial of permission to leave is dramatically distinguishable from M.B.'s claim of being physically stopped, pushed, and escorted to another location for disciplinary action.

Defendant Livingston concludes her argument concerning the Fourth Amendment claim by reliance on the principle that, by virtue of laws requiring compulsory attendance, a school may place limitations on a student's freedom of movement.  Defendant's argument does not address her actions in physically stopping M.B., a seizure by a state actor.  Plaintiffs allege that Defendant Livingston physically seized M.B. without cause, an unreasonable action by a government actor which the Fourth Amendment specifically prohibits.

The Fourth Amendment guarantee against unreasonable searches and seizures does not apply only to law enforcement.  In a school environment, seizures of students by school officials must be justified and reasonably related in scope to the circumstances of the situation.  *Wofford v. Evans*, 390 F.3d 318, 326 (4th Cir. 2004); *New Jersey v. TLO*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).  In the Fourth Circuit, it is clearly established that "a school official may detain a student ***if there is a reasonable basis for believing that the pupil has violated the law or a school rule***." *Wofford* at 326 (emphasis added).  In the present case, there was no reasonable basis to believe M.B. had violated any law or school rule and thus no justification for Defendant Livingston's action.

Since 1943, the United States Supreme Court has established that the government may not compel a student to salute or pledge allegiance to the flag.  *West Virginia Bd. of Ed. v. Barnette*,

319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). South Carolina statutory law guarantees a student's right to abstain from reciting the pledge of allegiance without fear of penalty. S.C. Code § 59-1-455. M.B. was lawfully exercising her right to abstain from reciting the pledge of allegiance, was not infringing on the rights of others, and was not disrupting school activities. She was silently walking in a hallway when Defendant Livingston physically grabbed her, forcibly stopped her, and escorted her to the principal's office. Livingston's actions were wholly unjustified in light of clearly established law.

Because no reasonable basis existed for Defendant Livingston's seizure of M.B., and it is clearly established that a school official may only detain a student based on a reasonable belief that the student has violated the law or a school rule, Defendant Livingston is not entitled to qualified immunity.

### III. Qualified immunity does not bar Plaintiffs' equal protection claim against Defendant Livingston.

As to the equal protection claim, Defendant Livingston again seeks to re-litigate the Court's determination that Plaintiffs' state a constitutional injury and argues that Plaintiffs must present caselaw finding that Livingston's exact actions violate the Fourteenth Amendment's equal protection provision. M.B. alleges that she was treated differently from other students in the same hallway who were also not reciting the pledge as a result of her race. Specifically, M.B. alleges, and at this stage all allegations must be taken as true and all inferences drawn in M.B.'s favor, Defendant Livingston singled M.B. out due to her race and physically seized M.B., grabbing her and pushing her against a wall in an attempt to force M.B. to recognize the pledge of allegiance and to punish M.B. for walking in silent protest. *Amended Complaint*, para. 34, Docket No. 15. Defendant Livingston then escorted M.B. to the principal as an additional penalty for her act of protest and as a further act of racial animus against M.B. Defendant Livingston took these actions

8

only against M.B. while students of other races were permitted to walk or otherwise refrain from reciting the pledge without consequence. *Id*., para. 35. In essence, Plaintiffs allege that Defendant Livingston selectively enforced a requirement to participate in the pledge of allegiance against M.B., an African American student, while not enforcing such a requirement against students of other races displaying the same behavior in the hallway.

In its prior Order, this Court found that these facts stated a viable equal protection claim against Defendant Livingston. Defendant cites to a number of District Court cases where the court ruled there was no constitutional injury, but none involve the physical seizure of a plaintiff. Livingston argues that M.B. was neither punished nor threatened with punishment and ignores M.B.'s allegation that punishment is precisely what occurred. M.B. was physically seized, pushed, and escorted to the principal's office. M.B.'s silent act of protest was forcibly stopped by Defendant Livingston's actions.

This Court cites to *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021) in finding that M.B. alleged sufficient facts to demonstrate that she was "treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Id*. at 238. The Equal Protection Clause of the Fourteenth Amendment provides what is "essentially a direction that all persons similarly situated should be treated alike" and protects citizens from intentional and arbitrary discrimination. *Grimm v. Gloucester County School Bd.*, 972 F.3d 586 (4th Cir. 2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). This law in this area is well-settled and clearly established.

In support of Livingston's claim that her conduct, taken as true, does not rise to the level of a constitutional violation, Defendant cites only to non-binding District Court opinions. It is well settled that the "Fourteenth Amendment equal protection clause embraces a right to be free

9

from racially discriminatory enforcement of a state's criminal laws." *Butler v. Cooper*, 554 F.2d 645, 646 (4th Cir. 1977); citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Here, the statutory law of South Carolina provides that all public-school students shall recite the pledge of allegiance at a time designated by the school and specifically provides that a student who does not wish to participate "may not be penalized." S.C. Code § 59-1-455. In choosing to stop, seize, and escort M.B. to the principal's office, while allowing white students displaying the same behavior in the same environment the protection of the statutory language, Defendant Livingston selectively enforced the law. Plaintiffs have properly alleged racial animus and intend to gather evidence in the discovery process to further substantiate this claim.

Defendant is not entitled to qualified immunity on the equal protection claim.

**IV. Defendants are not entitled to qualified immunity as to Plaintiffs' First Amendment claims.**

Plaintiffs have two claims under 42 U.S.C. § 1983 for violations of M.B.'s First Amendment rights: (1) against Defendant Livingston for preventing M.B. from exercising her First Amendment right to protest and (2) against both Defendant Livingston and Defendant Smith for First Amendment retaliation. As with the other claims at issue in the present motion, this Court has already determined that Plaintiffs have stated plausible claims for relief under both theories. Defendant Livingston argues that she is entitled to qualified immunity because there is no precedent which clearly establishes that her conduct violated the First Amendment, citing a case from the Southern District of Texas. Defendant Smith argues that qualified immunity shields his actions in the retaliation claim, claiming that his words to M.B. were not threatening, coercive, or intimidating and did not adversely affect M.B.'s First Amendment rights. Defendant Livingston does not challenge the First Amendment retaliation claim against her at this juncture.

### A. Fourth Circuit authority provides clear precedence for Plaintiffs' First Amendment claim against Defendant Livingston.

The right of a citizen to protest and speak out against the government is a fundamental and well-established right in the United States. See *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). The Fourth Circuit reaffirmed this right in *Occupy Columbia v. Haley*, 738 F.3d 107 (4th Cir. 2013) with a recitation of the law as follows:

> 'A bedrock First Amendment principle is that citizens have a right to voice dissent from government policies.' *Tobey v. Jones*, 706 F.3d 379, 391 (4th Cir. 2013)(internal citation omitted). Indeed, 'it is fundamental that the First Amendment prohibits governmental infringement on the right of free speech.' *Rendell-Baker v. Kohn*, 457 U.S. 830, 837, 102 S.Ct. 2764 (1982). *Occupy Columbia* at 125.

Per the Plaintiffs' Amended Complaint and the prior Order of this Court, in an action of silent protest against the compulsory recitation of the pledge of allegiance and in protest to the pledge itself, M.B. chose to not participate in the pledge and continued to walk silently down a hallway of the school. Like the symbolic act of wearing an armband for the purpose of expressing certain views, M.B.'s conduct can and must be construed as a silent act of protest and protected speech. *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969). Upon observing M.B.'s symbolic act of silent protest, Defendant Livingston physically stopped M.B. and demanded that she acknowledge the pledge, therein demanding that M.B.'s act of silent protest stop. This is clear interference with M.B.'s constitutionally protected First Amendment rights.

Defendant Livingston relies on an opinion from the Southern District Court of Texas for her position that stopping a student from walking while the pledge of allegiance is recited is not a violation of clearly established law. *Oliver v. Klein Indep. Sch. Dist.*, 448 F.Supp. 3d 673 (S.D. Tex. 2020). While not binding authority on this Court, the Texas opinion notably begins its

decision stating that "the Supreme Court made it clear in 1943, in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), that the First Amendment forbids compelling saluting or pledging allegiance to the flag." *Oliver* at 679. The majority of the allegations in the Texas case involve a student sitting during the pledge and the Texas statutory requirement that a parent or guardian must request that a student be excused from standing for the pledge. The only allegations in that matter which reference walking involve one defendant who encountered the student walking in a hallway when the pledge began over the school intercom. The defendant instructed the student to stop, and she paused momentarily then continued walking. The defendant is alleged to have rolled his eyes and made a noise in response. *Id*. 683-4. The court granted summary judgment for this defendant because (1) at the time of the incident, there was no written request that the student be excused from standing and (2) that there was no established law holding that asking a student to stop walking with no action to require participation in the pledge or enforce the stop-in-place request is equivalent to instructing participation. *Id*. 696-7. In *Oliver*, the plaintiff did not argue that this defendant interfered with a lawful silent protest.

Even if *Oliver* were binding authority for this Court, the actions of Defendant Livingston are clearly distinguished from those in that case. Defendant Livingston not only told M.B. to stop, but she also forcibly grabbed M.B. and physically stopped her from continuing. Defendant Livingston then escorted M.B. to the principal, an action which implies imminent punishment for any high school student. Moreover, Defendant Livingston imposed her will and ideology on M.B., forcing her to stop her silent protest. While she may not have compelled words from M.B., Defendant Livingston did compel M.B. to stop her constitutionally protected speech of silent protest.

Defendant Livingston also argues that a due process ruling regarding deprivation of a liberty interest in *Lang v. Farley*, 501 F.3d 577 (6th Cir. 2007) establishes that her actions cannot amount to punishment. This proffered authority is not only from outside the Fourth Circuit and not binding on this Court, but it is also inapplicable to a First Amendment analysis.

It is well-established law that a student may not be compelled to recite the pledge of allegiance. See *Tinker* and *Barnette* supra. Further, students are free to engage in actions of protest that do not materially disrupt the operation of a school or impinge upon another student's rights. *Tinker* at 509. In light of this clearly established law from the United States Supreme Court, a reasonable school official would understand that forcibly stopping, confronting, and interrupting a student engaged in silent protest by not participating in the pledge of allegiance would violate the law. A reasonable school official would understand that physically engaging with that student, demanding that she stop her protest and acknowledge the pledge, and escorting her to the principal's office would violate the law.

Defendant Livingston seeks to downplay her conduct, but this is not a proper consideration for the Court at this juncture. The allegations support the finding of a First Amendment violation and there is no question that the alleged conduct violates clearly established law. Should Defendant Livingston's motion be construed to also seek qualified immunity on the retaliation claim against her, Plaintiffs offer that all of Defendant Livingston's conduct also has a chilling effect and adverse impact on a similarly-situated person in light of the circumstances presented herein.

**B.      Defendant Smith also violated clearly established law by engaging in retaliatory conduct against M.B.**

Defendant Smith contends he is entitled to qualified immunity on the First Amendment retaliation claim based on Fourth Circuit precedent which finds that where the alleged act of retaliation is limited to speech, this alone cannot adversely affect a citizen's First Amendment

rights. Defendant Smith cites *Suarez Corp. Industries v. McGraw*, 202 F.3d 676 (4th Cir. 2000) which involved two public officials who made alleged defamatory statements to third parties and the media in retaliation for Suarez advertisements which criticized the public officials. In analyzing whether Suarez's First Amendment rights were adversely affected, the Fourth Circuit notes that this "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 686.

Generally, a claim alleging chilling of a citizen's First Amendment right hinges on whether the actions of the retaliator would tend to chill or adversely affect an individual's exercise of their First Amendment rights. *The Baltimore Sun Co. v. Elrich*, 437 F.3d 410, 415 (4th Cir. 2006). This determination is an objective one – would a similarly-situated reasonable person be chilled by the retaliator's conduct in light of the circumstances presented in the particular case. *Id*., 416. Here, the issue can be stated as whether a reasonable high school student who was forcibly stopped and escorted to the principal's office after walking in silent protest during the pledge of allegiance be chilled by a principal's actions in questioning her patriotism and informing her that he would review the video footage. *Amended Complaint*, para. 37-38. Thereafter, the retaliator protected Defendant Livingston, making the deliberate choice to approve and/or ratify the original conduct of forcibly stopping the student in the hallway while she was engaged in constitutionally protected speech. *Id*., para. 42.

Defendant Smith notes in his argument that a retaliator's speech can demonstrate adverse impact where it is "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow." *Suarez* at 689. Smith held a position of authority over M.B., one which any reasonable high school student would recognize.

14

He acknowledges M.B.'s act of protest when he questioned her patriotism. He then says he will review the video and thereafter ratifies Defendant Livingston's conduct. The only reasonable interpretation of his actions by a similarly-situated high school student is that not only is interference with acts of silent protest tolerated, school staff can physically intervene to stop a student's act of protected speech. Taking all inferences in the light most favorable to Plaintiffs, Defendant Smith's conduct would intimidate a similarly-situated student and tend to chill the exercise of that reasonable student's First Amendment rights.

Based on the law of the Fourth Circuit, Defendant Smith would have known that his conduct in questioning M.B.'s act of protest and acceptance of Defendant Livingston's actions against her would adversely affect, intimidate, and tend to chill the protected speech of a similarly-situated high school student. Defendant Smith is not entitled to qualified immunity on the retaliation claim.

## V. The Court's prior order does not preclude Plaintiffs' loss of services claim.

Defendant District argues that the Court's prior ruling concerning the negligence claims asserted on behalf of Plaintiff M.B. preclude any finding of liability for Plaintiffs Fynale and Shavell Barnwell's claim for loss of services of their minor child. In support of this argument, the District cites *Creighton v. Coligny Plaza Ltd. Partnership*, 334 S.C. 96, 512 S.E.2d 510, 523 (S.C. Ct. App. 1998), but this case does not involve a parental loss of services claim. Creighton addresses a spouse's claim for loss of consortium, an independent action under South Carolina law with no bearing on a parental loss of services claim. *Id.*, 119.

The Court correctly declined to dismiss Plaintiffs Fynale and Shavell's independent claims for loss of services. The District urges the Court to dismiss those claims now, asserting that the parental claims are dependent on compensation for M.B.'s claims. There is no such requirement.

15

A parent's claim for loss of a child's services, recovery of medical expenses, and loss of a child's earning capacity exists at common law and is wholly independent from any claim of loss on behalf of the child. *Wright* supra.; *Berger v. Charleston Consol. Ry. Gas & Elec Co.*, 93 S.C. 372, 76 S.E. 1096 (1913). Additionally, the Supreme Court of South Carolina established that parental claims for loss of services and medical expenses are within the scope of "loss" recoverable under the South Carolina Tort Claims Act, and the parent's "loss" is separately cognizable from the child's injury as a separate and distinct claim. *Wright v. Colleton County School District*, 301 S.C. 282, 289, 391 S.E.2d 564 (1990).

In this Court's prior ruling, it found that M.B. had not alleged any physical injury as a result of the Defendants' conduct, and while Plaintiffs' allege that M.B. suffered mental anguish, they did not allege that the mental anguish caused a substantial disruption in daily routine or a high degree of mental pain and distress. The Court dismissed M.B.'s negligence claims pursuant to the reasoning in *Woodberry v. United States,* No. 2:12-cv-1872-DCN (D.S.C. 2015) which notes that mental anguish is only compensable if it causes substantial disruption as mentioned above, citing 22 Sm. Jur. 2d Damages §223. The District attempts to apply the same reasoning to the parents' claim despite this being a separate injury and loss to the parents themselves.

Plaintiffs note that the Woodberry court also cites to *Boan v. Blackwell*, 343 S.C. 498, 541 S.E.2d 242 (2001) which addresses compensable elements of damages under South Carolina law. In South Carolina, separate damages are given for mental anguish where the evidence shows shock, fright, emotional upset, and/or humiliation as a result of the defendant's negligence. *Id.*, 502. *Boan* establishes that South Carolina law allows for recovery for mental anguish without a showing that it caused a substantial disruption in daily routine or a high degree of mental pain and distress. If this Court is inclined to revisit its prior ruling as Defendants repeatedly request, the

negligence claims on behalf of M.B. should be reinstated as South Carolina law does not require a showing of substantial disruption for mental anguish to be compensable.

## CONCLUSION

To the extent Defendants seek to repeat the argument made in its 12(b)(6) Motion to Dismiss and challenge the sufficiency of the allegations asserted by Plaintiff regarding the remaining causes of action, this is procedurally inappropriate and should be denied. Insofar as Defendants seek judgment as a matter of law on the grounds of qualified immunity as to the federal claims, Plaintiffs herein present clear authority applicable in this jurisdiction which puts each of the Defendants on notice that their conduct, as alleged by Plaintiffs, was unlawful and violated the constitutional rights of M.B. Additionally, Plaintiffs Fynale and Shavell Barnwell have set forth an appropriate claim for loss of services and the District's argument that this claim is somehow derivative of a negligence claim on behalf of M.B. is a misstatement of South Carolina law.

Accordingly, Defendants' Rule 12(c) Motion for Judgment on the Pleadings must be denied, and this matter should proceed to discovery.

Respectfully submitted,

s/Tyler D. Bailey
Federal ID #12294
BAILEY LAW FIRM, L.L.C.
Attorney for Plaintiff
1430 Richland Street (29201)
P.O. Box 532
Columbia, South Carolina 29202
Telephone: (803) 667-9716
Fax: 1-803-526-7642
Email: tyler@baileylawfirmsc.com

Columbia, South Carolina